Esche and Wofford v. Bunuel-Jordana and others, and if I pronounce the name of ESCHE wrong, I apologize. Good morning, Your Honors. May it please the Court, Counsel. I'm Lori Gilday, appearing on behalf of Renown Regional Medical Center and the individual appellants. I'll refer to the appellants collectively as Renown. And can you move the mic a little closer, please? Is that better? Yes, thank you. Vertically challenged. With me at counsel table is co-counsel, Dominique Pallara. We'd like to reserve three minutes for rebuttal. Renown is entitled to immunity from Section 1983 claims that arise from its good-faith performance of statutory duties. The District Court's decision to the contrary should be reversed. Please begin with the jurisdictional question, please. Yes, Your Honor. This case is appealable as an interlocutory matter under the three factors that the Court set out in Cohen. The District Court conclusively decided that the good-faith immunity was not available to Renown. First of all, you're using the term good-faith immunity, but does that term appear anywhere in any of the case law? As opposed to good-faith defense. Your Honor, whether it's a defense, this Court called it an affirmative defense in Danielson. Appealability wasn't at issue there. And we know from the United States Supreme Court Gomez v. Toledo that qualified immunity is an affirmative defense, but it is still immediately appealable when it's been decided as a matter of law. And so we take the position — Because it's an immunity from suit. Yes, which this is as well, Your Honor. From where do you get that idea? Your Honor, I think it comes naturally from the United States Supreme Court's immunity test, most recently discussed in Filarski, where the Court looked at the two parts, the two pieces to the test is what did the common law do with respect to immunity? And then they looked at what is the nature of the function here being performed and is the purpose of immunity served by affording immunity to that function? But the ultimate conclusion in Filarski was that qualified immunity as such applied. Yes, Your Honor. Okay. You're not arguing that here. You couldn't because the Supreme Court said otherwise. This case is about immunity. And I would encourage the Court not to get too tied up in what we call it. If we call it good faith or qualified immunity, certainly the immunity we're seeking here is akin to qualified immunity. And I also acknowledge, Your Honor, the first impressionness of the argument that we're making here. But I do think it's compelled by this Court's discussion and certainly builds on this Court's discussion in Danielson and Clement. Doesn't Danielson say otherwise fairly directly? Danielson says that good faith is an affirmative defense. But that doesn't go to the issue of whether it's immediately appealable or not. And Clement says the facts of this case justify allowing Monterey Toe Service to assert such a good faith defense. I mean, I'm having trouble seeing how in the sorting process this is different than most affirmative defenses where the person's argument is I'm not liable. I shouldn't have to pay any money or be enjoined because I didn't do anything wrong. Right. I understand the point the Court's making. But something can be both an affirmative defense and immediately appealable. Qualified immunity is exactly that. And that's what we submit the Court should do in this situation. And it's really about the why of it. Why do we have immunity? We have immunity, the United States Supreme Court has told us over and over again, because we want to ensure the effective performance of government functions. We want people who are engaged in the government's work to do so fearlessly and not be distracted by a threat of a federal lawsuit. That's why we give immunity. And that purpose is served here. The difference is whether it's a defense to suit or immunity from suit or immunity from liability. We have cases describing the good faith defense as immunity from liability or defense to liability. Do you have anything where a court has said that the good faith defense confers immunity from suit? So, Your Honor, what I would point to are the cases that we cite in our brief. Pernicario from the Fifth Circuit, Sherman from the Seventh Circuit, and Jensen from the Tenth Circuit all hold that private doctors who are working with the government and performing government functions are entitled to immunity. They don't call it good faith immunity. But again, Your Honor, I submit to you that — Like in Filarski, contractors with the government, they were working for the government. Renown was not working for the government. It was working under a government statute and says it was complying with it, but it was in no way being dictated to or otherwise involved with the government directly in anything it was doing. I disagree, Your Honor, respectfully. The statutory obligations are directive. The statute says must file a petition. But that's true of a myriad of statutes that tell people what they must do. So every time a statute tells you — first of all, this statute is a very complicated one, and I'm not sure it does do that. But assuming it does do that, there are many statutes that tell you what you must do. You must stop at red lights. If it tells me that I must stop at a red light, am I working for the government? Your Honor, we're not seeking that broad of a rule of law here. The rule of law that we're seeking would be limited to private actors who are specifically called out in state statute and given government functions. The Nevada Supreme Court — And what's the government function? The government function — To provide medical care? — is tending to someone who is in mental health crisis. One of the cases that's cited in Cummings, the case out of New Jersey, talks about it as the state's moral duty to tend to those who are suffering from mental illness. What about statutes that tell hospitals that they have to serve the poor? That they have an obligation to serve the poor? Same thing? I don't know, Your Honor. I think I would need to see the statutory language. And the other thing to remember in this case is that it wasn't just Renown. Renown did what it was supposed to do. There are detailed procedures in the statute. Renown complied with those procedures. And then the state court took over and was monitoring the commitment proceedings. Well, the state court really wasn't. I mean, as to the facts. But let's not — I mean, it doesn't really matter for this purpose. I think it matters greatly, Your Honor, that there was state court supervision here. The state court supervision consisted of providing continuances. In response to the statutory directive that Renown provide updates on medical care. Renown didn't actually provide updates to the court. It provided updates to the PD, as I understand, or to somebody else, but not to the court. As the district court judge found, the process that was followed here complied with the statute. Well, that's true or not. It wasn't to the court, and the court didn't do anything to tell you to keep her there. There was no court order telling you to keep her there, right? I agree with that, yes. We didn't ever get to that process here because Ms. Esch was not finished with her medical treatment. And the statute requires that as well. In 433A.165, the statute requires that the medical treatment be completed before the person is involuntarily committed to a mental health institution.  I mean, this is kind of off to the side with regard to the jurisdictional question. But as you read the statute, there is no process required of any outside determination. If you're going to provide somebody involuntarily medical care and also mental health care before there's, because she can't have a hearing yet on the mental health issue because of her medical problem. In other words, you're assuming the statute contemplates involuntary medical care, but I don't know where it does that. Involuntary medical care with no process, nobody deciding whether she needs the medical care. No outside body. She had process here. What was the process? The petition was filed. Right, and nothing happened. The state court took over supervision, required the weekly updates, and she was appointed counsel. What she didn't know about. Well, it's not up to Renown to get in between a patient and their lawyer. But then when she asked for counsel, she was taken off the telephone. I mean, this is probably not worth all talking about now. We should stick to the jurisdictional issue. But it seems to me that your reading of the statute would raise enormous constitutional problems if that's actually what the statute said. Well, Your Honor, I would respond by saying there's no case law that would give Renown reason to doubt the constitutionality of the statute as it was applied in this circumstance. I would like to return to the jurisdictional question because the way I read Danielson, Danielson took great pains to distinguish precedent that held private actors are not entitled to qualified immunity as immunity from suit. And the whole basis of Danielson is recognizing the good faith defense in the Ninth Circuit was because the good faith defense is not immunity from suit, but instead immunity from liability. So I do not know how we could now say that the good faith defense is an immunity from suit without being in direct conflict with Danielson. And I think the way you get there, Your Honor, is Danielson wasn't about appealability. But appealability turns, interlocutory, the collateral review doctrine turns on whether the defense is defense from suit or defense from liability. Yes. And all immunities are defense from suit. That's the whole point of immunity. Not true. There are plenty of defenses or immunities from liability that's literally here. There is an immunity from liability rather than immunity from suit. And so that what the question before us today is, which one is the good faith defense? Is it an immunity from suit? Yes. Just like qualified immunity, in which case we do need to decide it early. Yes. Because the whole benefit of it is you don't even need to be in court.  Immunity from liability says you have to be in court, but you may be able to prevail and say, I don't know any damages because of this defense. But you still have to go to court and prove it. In that latter situation we have held again and again, there is no collateral review. So the whole question today on jurisdiction turns on whether the good faith defense is immunity from liability or immunity from suit. And we clearly recognized in Danielson, we said you can have private actors can have this defense because it is only immunity from liability. So how can we today, unless you can point me to something that has clearly abrogated our precedent, which is only from not that long ago, how can we come out differently without creating an inter-circuit conflict? This court said in DC Comics that when you're talking about the third prong of the collateral order doctrine, what you're looking at is whether there's an important public interest at play. And will that important public interest be significantly impacted by a delay in resolution of the question? There is no question here that there is an important public interest at play when we're talking about the treatment of someone in a mental health crisis and her unborn baby. There's no question about that. The Nevada Supreme Court made that clear in comics. So then the question is, is that significant public interest going to be impacted if there's a delay in the argument? Even if it is merely immunity from liability, there's still enough other factors weighing here to justify the collateral. Yes, Your Honor. It's a straight up application of the collateral order doctrine in Cohen. And I think, Your Honor, the other thing that's really important about Danielson is the fairness considerations that the court talked about in Danielson, in terms of if one group of people is entitled to this, why isn't the other group of people entitled to it? And there's no question in this case. But Danielson was clearly not applying an immunity from suit. Do you disagree with that? You might try to distinguish yourself from Danielson. But Danielson was not applying an immunity from suit. It spoke in terms of an affirmative defense. I agree with that, Your Honor. But what I'm saying to you is something can be both. It can be an affirmative defense. But still, it's an immunity from suit. And the court was talking to Danielson about the unfairness of giving something to one set of people and not giving it to the other. And there's no question in this circumstance here that if a public...  You just changed your position. Sorry. Because you said that Danielson leaves open the idea that this good faith defense is an immunity from suit. And that's what I asked you to show me how we can draw that conclusion. Danielson says that the Clement Court acted well within its authority to find that private parties cannot assert an immunity to suit under Section 1983. But they can invoke a good faith defense. And their whole reasoning for letting the good faith defense survive is because it is only a defense to liability. So either you need to point me to something in Danielson that changes this and says it's actually good faith defense is an immunity from suit. Or something that abrogates Danielson on the point of whether it is good faith defense is immunity from liability only, not suit. Is the portion of Danielson that you were reading, what case was it talking about? So it's distinguishing the cases. It's saying Clement held that private parties cannot assert an immunity to suit. But they can invoke a good faith defense. Yes. And they're reconciling all of that with Howerton. And they're saying that will allow private parties to assert a good faith defense because it is an immunity from liability, not suit. I think I'm tracking with you now, Judge.  And I think the discussion goes back to the United States Supreme Court's decisions in Wyatt and Richardson. Where the court is talking about private actors not being entitled to qualified immunity. Filarski upsets that apple cart in a pretty dramatic way. When the court says private actors can have qualified immunity. So I think to the extent... In Filarski, the person was a government contractor. And the question was essentially whether an independent contractor should be treated like an employee for purposes of the immunity. Is that right? And the question here is whether or not if a public employee did what Renown did. There's no question that they would have immunity. But Renown was neither a public employee nor an independent contractor working for the government. They are working at the direction of the government, Your Honor. Government directed... Was there any order... This is the Clement question. Was there any order that the Renown treat her for the medical condition and treat her in the way that they treated her? Well, the state statute certainly is a government directive. And it provides... No particular person told you to do this. No government... You were not working for or with any government actor. I disagree with that, Your Honor. We filed the petition in court. And the court became involved. And then the court appointed counsel for... Every time someone files a petition in court, they become a state actor? Well, I think it depends on the authority under which they're acting. And the only reason we're standing here is because the Nevada Supreme Court has said that Renown is a state actor for purposes of 1983. It's not that way everywhere. I'm contesting that here, although you could be. No, Your Honor. We're not contesting for purposes of this hearing. But we're not standing by the Nevada Supreme Court. So if you thought that was a problem, you could have raised it. Well, but if we're not state actors, then there's no 1983 liability at all. Well, I should use a more precise... Every time someone goes to court and says, we think we have an obligation to do this, that they become acting under a government directive? I mean, ultimately, what the other cases that you're talking about are whether when a private actor essentially becomes someone that's so intertwined with the government that they are entitled to qualified immunity. But that doesn't change when the private actor is not entitled to qualified immunity. Instead, are invoking the good faith defense. The nature of the good faith defense is still distinct from qualified immunity. The good faith defense is still just immunity from liability, not suit. And so what I would say to Your Honor is that just like qualified immunity can be both an affirmative defense and something that you can take up on appeal. Both of them are affirmative defenses. The question is whether this is a defense from suit or liability. And we have squarely held it is a defense from liability. So I understand you want to make... You can make a separate argument that your clients are entitled to qualified immunity. But right now you're relying on the good faith defense, which is different from qualified immunity, which we have said it is defense from liability only. Yeah, and I just disagree with that. How can you disagree with that when it's said specifically in Danielson, for example, that Clement held that private parties cannot assert an immunity to suit under Section 1983, but they could invoke a good faith defense. That's what it says. This gets back to my point about Clement. That analysis of Clement is based on Richardson and Wyatt, which the United States Supreme Court has changed. All right. Thank you, counsel. We've taken a lot of your time. My light's blinking. I'm sorry. No, no, that's fine. We've taken a lot of your time with questions. We'll give you two minutes for rebuttal. Thank you. May it please the Court, good morning. I'm Carrie Doyle. Together with my co-counsel, Stephen Osborne, we represent the estate of Jill Ann Esch and her two children, Cameron and Sierra. I can see, Your Honors, that you're focused on jurisdiction, so I will focus on that. If you have other questions, I'm happy to address them. This case can be simply disposed of. Under controlling Ninth Circuit precedent, there is no jurisdiction over an appeal from a denial of a good-faith defense, period. Well, we don't have a case ever specifically so holding, but we have cases saying that's an immunity from liability and not a suit. Correct, Your Honor, and we have cases saying that the collateral order doctrine should be narrowly construed and should not be expanded to include more cases. We have significant precedent, Filarski, Richardson, distinguishing qualified immunity from this good-faith defense, including for the policy reasons that Renown is currently arguing justify expanding the collateral order doctrine. Because as private actors, they aren't subject to the same important protections that qualified immunity protects, that operation of discretion for enforcing statutes that they both roped and are responsible for enforcing. I'll ask both counsel, is there any case in this circuit holding that there is collateral review or defense that is only in defense from liability? None that I found, Your Honor. I believe truly that it has to be immunity from suit. Otherwise, the collateral order doctrine swallows the rule against intermediate and interlocutory appeals. Otherwise, everything would come before you before the final judgment. Judge Bennett, you raised a very good point. You said that acting under this statute doesn't make them the same as a state actor. Their argument is that the statute directed them to place her under a legal hold. If that were true, then anytime they provide emergency medical care to an indigent patient, they would be a state actor. But your position is that they are state actors. Correct, Your Honor. They are state actors. I thought you just said they're not state actors. No, absolutely not. And to be very clear, not only do they concede now that they are state actors, they didn't oppose our motion for summary judgment that they were state actors. They should not be allowed to argue that they are not state actors. Judge Berzon, what I was trying to point out is that that's not operating under a directive of the government to make them a state contractor, as you would be in Filarski, or entitled to, for instance, derivative sovereign immunity for acting on behalf of the government at the government's direction. But your argument has to be that the test for whether someone is a state actor for purposes of 1983 liability is different from the question of whether they are acting under a directive or a contract that gives them qualified immunity. So what is the daylight between those two standards? The discretion of the actor acting under the statute. In this case, Renown argues that the important public policy is that they have this duty to impose an emergency mental health hold and provide unwanted medical care to someone. They did that at their discretion. They extended the hold at their discretion, as opposed to being, as in the case of Filarski, an attorney hired by the city to conduct an investigation, and conducting an investigation at the behest of and oversight with the government entity. So, Your Honor, the daylight, I believe, is the involvement and supervision of the state, of the government, in that performance of duty. And I would point you to the distinction between Filarski and Richardson by the U.S. Supreme Court in Filarski. Because I truly, I agree with you, Your Honor. It is finely parsed. What's the difference between a private entity running a private prison on their own behalf, except serving a traditional governmental purpose, which we know makes them state actors for purposes of 1983 liability? What is the difference between that and being a government contractor? And I think that the Supreme Court in Filarski pointed out that it is very much that oversight. When you are a private entity performing a traditional public function, you still do so subject to market forces, subject to review by the government for renewing your contract, but not subject to election or the governmental processes that are the reason we have qualified immunity to protect people from interference with the exercise of official duties. And I just want to be clear as a matter of record. The defendants in this case were not arguing that they are entitled to qualified immunity. That's not the issue before us right now. Their argument is that the conclusion that they're not titled to the good faith defense is a matter of summary judgment. Whether that decision is subject to the collateral order doctrine. You are very correct, Your Honor. They have not argued that they are entitled to qualified immunity. They have used entirely qualified immunity cases to argue how this court should treat good faith defenses. But even at the summary judgment stage in district court, they did not argue that they were entitled to qualified immunity. And again, we moved for summary judgment saying that they were not. Your Honor, they've acknowledged the first impression of this question. And I think that that is perhaps where we're going with, do we have a case that says good faith defense is not a collateral order subject to interlocutory appeal or intermediate appeal? But it is so clearly defined by the case law addressing the collateral order doctrine that it doesn't seem like an open question. Truthfully, Judge Berzon, and based in part on issues you've said, my clients would love it if the court could exercise jurisdiction. We don't want to be here on appeal, go back to trial, and have the court go to trial on limited issues just to come back here on appeal of our constitutional claims. As you pointed out, even if the court does exercise jurisdiction in this case, the constitutional violations here for a hospital to hold a person against her will for more than 30 days, deny her a hearing, punish her if she asked for a lawyer, if she even asked for a lawyer, deprive her of contact with the outside world, seclude her to a single room, and yet the district court here refused to look at those constitutional issues. But more importantly here today, Renown argues that you shouldn't either. When looking at whether they're entitled to a good faith defense, if the court exercises jurisdiction, they say that that good faith defense has nothing to do with the constitutionality of their actions. So, your honors, they want to compare the good faith defense to qualified immunity in every way, except when it comes to whether or not the defendant violated the clearly established law governing constitutional rights. So, your honors, truly, we would appreciate it if you would operate, exercise jurisdiction here this appeal, affirm the denial of good faith defense, sorry, affirm the denial of the good faith defense, and reverse the grant of summary judgment in Renown's favor on the constitutional violations. But you don't think we have jurisdiction to do it. Your honor, I think that it's my duty to argue to you the controlling law. I do not think that you have jurisdiction over this case at this time. But you would have to raise it at the conclusion of the case on appeal. Correct. I do believe so. You think there's a currently pending Supreme Court case about the collateral order doctrine as applied to derivative sovereign immunity. There was some suggestion that maybe that's pertinent here. Is it pertinent here? Your honor, you're correct. They filed a 28-J letter raising that, and they've actually filed an amicus in that case, arguing that that case affects the outcome of this case in favor of the petition to grant cert. No. It doesn't have any bearing on this case. Derivative sovereign immunity, like qualified immunity, derives from the government function. And it doesn't involve constitutional claims. It serves to protect those same policy interests. So a decision in the GEO Group case versus Medi-Cal would not affect anything in this case. Your honors, unless you have more questions, I'm happy to surrender my time. All right. Thank you, counsel. And as I say, we'll give you two minutes for rebuttal. Immunity we're seeking in this case does derive from the public function that we were performing. And so in that way, it is akin to qualified immunity. There's something you said earlier I didn't understand. When I was reading you the language from Danielson, you said something about Filarski changed that. But Filarski was earlier. Filarski came out before Danielson, yes. I agree with that, yes. What I was referring to is Danielson's discussion of Clement. And Clement was decided before Filarski. Okay, but we're banned by Danielson as well as by Clement. No, I understand that. If you have an argument, and maybe it's an argument to an on-bank court here, but we have a controlling precedent in this court as to the fact that this is an immunity from liability, not suit. And I don't think Danielson is controlling on the question because appealability was not the issue in Danielson. But it's controlling on the question of whether it's an immunity from suit or immunity from liability. Therefore, excuse me, you would have to be arguing that despite the fact that it's an immunity from liability, there's still a collateral order doctrine appeal available. Is that what you're arguing? I'm arguing that this is appealable under the collateral order doctrine, yes, Your Honor. Can you identify any case in this circuit where we have applied the collateral order doctrine to a defense from liability only? No, Your Honor, and that's not what we're seeking here either. At the end of the day, this is a tragic case for all parties involved, and I would suggest to the court that we should think about the impossible situation that Renown found itself in here. They carried out their obligations that the Nevada legislature gave to them. They did so in good faith, and we would request that the court- Renown couldn't have just said, we don't want to provide this medical care. Go find another hospital. Let's think about that from a public policy perspective. I'm asking you what the statute says. I don't think the statute can be read that way, no. Which way? But to give them a choice, the statute says must. If you conclude- It doesn't say you must. It says the doctor who concludes that she's in a mental health crisis and the treatment's going to take more than 72 hours must file a petition for- 165 says must. It says the patient must be provided the care. It doesn't say who must provide the care, but go ahead. Well, the only other thing I was going to say, Your Honor, is thinking about if Renown had just said, we're not going to treat you, what would happen in that situation with Sierra? We know that because Renown complied with the statute here, as the district court found, we know that Sierra is alive. All right. Thank you, counsel. We thank counsel for their arguments. The case just argued is submitted.
judges: BERZON, BENNETT, SUNG